Lori M. Scott, Esq. (VSB No. 77304)
MCGUIREOODS LLP
One James Center
901 E. Cary Street
Richmond, Virginia 23219
(804) 775-1000

-and-

Ryan O. Lawlor
VEDDER PRICE P.C.
222 N. LaSalle, Suite 2600
Chicago, IL 60601
(312) 609-7500
(312) 609-5005
rlawlor@vedderprice.com

*Attorneys for Komatsu Financial Limited Partnership*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| MICHAEL C. BURT, | ) | Case No. 09-36136-KRH |
| | ) | |
| Debtor. | ) | Judge Kevin R. Huennekens |

### OBJECTION OF KOMATSU FINANCIAL LIMITED PARTNERSHIP TO CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN OF REORGANIZATION DATED SEPTEMBER 22, 2009

Komatsu Financial Limited Partnership ("Komatsu"), by its undersigned attorneys, hereby files this objection (the "Objection") to the Confirmation of the Chapter 13 Plan of Reorganization of Michael C. Burt ("Debtor") dated September 22, 2009 (the "Plan") [Docket No. 2]. In support of this Objection, Komatsu states as follows:

### BACKGROUND AND RELEVANT PLAN PROVISIONS

1.       Debtor commenced this case by filing a petition under Chapter 13 of the United States Bankruptcy Code on September 22, 2009 (the "Petition Date").

1

2.      Prior to the Petition Date, on or about March 28, 2007, Debtor entered into a certain Security Agreement – Conditional Sales Contract (also referred to as Contract No. 777-0028459-000) (as amended, supplemented or otherwise modified from time to time, "Contract 777-0028459-000"), under which Debtor agreed to pay Komatsu, as assignee[1], certain amounts set forth therein.  A copy of Contract 777-0028459-000 is attached hereto as "**Exhibit A**".

3.      Pursuant to Contract 777-0028459-000, as security for the repayment of the indebtedness and all other obligations of every type of Debtor to Komatsu, Debtor granted to Komatsu a purchase money, first priority lien on and security interest in certain equipment more fully described in Contract 777-0028459-000 (hereinafter "Collateral No. 1").  On or about April 11, 2007, Komatsu perfected its security interest in Collateral No. 1 by filing a U.C.C. Financing Statement, a copy of which is attached hereto as "**Exhibit B**".

4.      In addition, prior to the Petition Date, on or about April 23, 2007, Debtor entered into a certain Security Agreement – Conditional Sales Contract (also referred to as Contract No. 777-0028459-001) (as amended, supplemented or otherwise modified from time to time, "Contract 777-0028459-001"), under which Debtor agreed to pay Komatsu, as assignee[2], certain amounts set forth therein.  A copy of Contract 777-0028459-001 is attached hereto as "**Exhibit C**".

5.      Pursuant to Contract 777-0028459-001, as security for the repayment of the indebtedness and all other obligations of every type of Debtor to Komatsu, Debtor granted to Komatsu a purchase money, first priority lien on and security interest in certain equipment more

---

[1] On March 28, 2007, Rich Equipment Company ("Rich") assigned all of its right, title and interest in Contract 777-0028459-000 to Komatsu.

[2] On April 23, 2007, Rich assigned all of its right, title and interest in Contract 777-0028459-001 to Komatsu.

2

fully described in Contract 777-0028459-001 (hereinafter "Collateral No. 2") (collectively, Collateral No. 1 and Collateral No. 2 are referred to herein as the "Collateral"). On or about May 2, 2007, Komatsu perfected its security interest in Collateral No. 2 by filing a U.C.C. Financing Statement, a copy of which is attached hereto as "**Exhibit D**".

6.      For good and valuable consideration, on or about April 23, 2007, Debtor made, executed and delivered to Komatsu a Cross-Collateral Security Agreement under which the Collateral secured the payment and performance by the Debtor of each of the obligations contained in Contract 777-0028459-000 and Contract 777-0028459-001 (collectively, the "Contracts"). A true and correct copy of the Cross-Collateral Security Agreement is attached hereto as "**Exhibit E**".

7.      As of the Petition Date, the total amount due and owing to Komatsu by Debtor under the Contracts is $132,781.55 plus attorneys' fees, costs and other expenses provided for pursuant to the Contracts.

8.      The Plan provides for a replacement value of the Collateral at $128,000, proposes to pay to Komatsu a *pro rata* amount of the $3,645.00 paid each month to the Trustee to Komatsu for fifty nine (59) months (which may or may not total the $128,000 – the Plan is unclear at best), and proposes not to pay Komatsu any interest on account of its scheduled secured claim. (Plan, ¶¶ 3(B) and 11.)

9.      Komatsu objects to the Plan on several grounds. First, the Plan fails to provide any proposed interest to Komatsu on account of its secured claim, and, as a result, the Plan's proposed monthly installment payments are far below the payments required to compensate Komatsu for the present value of the Collateral. Second, the Plan is not feasible given the uncertainty and unsubstantiated assertions as to Debtor's income.

CHICAGO/#1999743.2

## **OBJECTION**

10.    The Plan provides that Komatsu maintains an allowed secured claim in the amount of $128,000.  Pursuant to 11 U.S.C. § 1325(a)(5)(B) of the Bankruptcy Code ("Code"), the Court may approve a Chapter 13 plan and proposed distributions to a secured creditor "of future installment payments <u>equivalent in value</u> to the securing property in lieu of distribution of the property itself."  <u>United Carolina Bank v. Hall</u>, 993 F.2d 1126, 1127 (4th Cir. 1993) (emphasis added).  To determine the appropriate amount of installment payments necessary to provide a secured creditor with a value equal to that of its interest in the secured property, the plan "must include in each installment not only a portion of the value of the secured creditor's interest in the property retained by the debtor but also interest at an appropriate rate to compensate the secured creditor for the delay in receiving the principal amount."  <u>Id.</u>

11.    As an initial matter, the Plan's purported installment payments to Komatsu— which is believed to be a *pro rata* amount of monthly installments of $3,645.00 for 59 months— may be significantly less than the value of the Collateral.  (Plan, ¶¶ 3(B) and 11.)  It is not Komatsu's responsibility to guess at what amount it will receive on a monthly basis.  The Plan should specifically identify such amounts.  Moreover, if Komatsu's belief as to the payment structure is correct, Komatsu is forced to bear the risk that Debtor continues to comply with the Plan while other creditors are paid earlier from funds generated through the use of the Collateral.  Such a result is inequitable.  For these reasons alone, the Plan may violate Section 1325(a)(5)(B), and, thus, cannot be confirmed.  <u>See</u> <u>United Carolina Bank</u>, 993 F.2d at 1130 ("If the plan provides for installment payments … the total amount of payments must have a *present value* equal to that of the lien.") (emphasis in original).

12.    Notwithstanding the foregoing, the Plan definitively fails Section 1325(a)(5)(B) as the Plan fails to provide any interest to Komatsu on account of its secured claim.  It is well

4

settled that the Bankruptcy Code requires payment of interest to secured creditors pursuant to a Chapter 13 plan of reorganization. United Carolina Bank, 993 F.2d at 1130 ("Because payment under a Chapter 13 plan is spread out over three to five years … the cost of this delay must be included in payments or the secured creditor will not receive the value of its security interest …."). Courts within the Fourth Circuit calculate the appropriate interest rate based on the "market rate", or the rate of interest that "best provides the secured creditor with its present value, taking into account not only the rates which it obtains from similar loans in the area but also its expenses in obtaining those loans …." Id. at 1131; In re Coles, 252 B.R. 66, 69 (Bankr. E.D. Va. 1999) (refusing to confirm a debtor's Chapter 13 plan, and holding that interest payments must be made to place the holder of an allowed secured claim in the same economical position as if the debtor has surrendered the property).

13.     Komatsu submits, and will establish at the confirmation hearing on the Plan, that the market rate of interest that best provides it with its present value on account of the Collateral is 6.99%.[3] Since the Plan inexplicably seeks to pay Komatsu no interest on account of its secured claim, the Plan should not be confirmed.

---

[3] Out of an abundance of caution, Komatsu directs the Court's attention to the Supreme Court of the United States' holding in the case of Till v. SCS Credit Corporation, 541 US 465 (2004), a case decided by a plurality of the Supreme Court. Accordingly, while such decision is persuasive, it is not binding on the Court. In Till, the Supreme Court rejected the "coerced loan," "presumptive contract rate," and "cost of funds" approaches previously used by various courts in determining the appropriate interest in a Chapter 13 plan on account of a secured creditor's claim. Instead, the Supreme Court opted for the "formula approach," which provides that interest be paid to a secured creditor on account of a Chapter 13 plan at a rate equal to the then Prime Rate plus certain percentage points for various risk factors associated with a particular debtor. As of this writing, the Prime Rate is approximately 3.45%, and Komatsu is confident that there are certain risk factors here, including, without limitation, Debtor's unsubstantiated income, the heavy use of the Collateral and the resulting depreciation of the value of the Collateral, that justify an increased risk factor of at least three (3) percentage points. Accordingly, under the formula approach or the approach adopted by the Fourth Circuit as set forth herein, Komatsu is entitled to an interest rate on account of its secured claim of approximately 6.99%.

CHICAGO/#1999743.2

14.     In addition to the foregoing, Komatsu objects to confirmation of the Plan on the

ground that the Plan is not feasible.  Pursuant to Section 1325(a)(6) of the Code, a debtor must

have the ability to make all proposed payments in order for a plan to be confirmed.  *See* 11

U.S.C. § 1325(a)(6).  "To satisfy feasibility, a debtor's plan must have a reasonable likelihood of

success, *i.e.* that it is likely that the debtor will have the necessary resources to make all

payments as directed by the plan.  The debtor carries the initial burden of showing that the Plan

is feasible."  First National Bank v. Fantasia (In re Fantasia), 211B.R. 420, 423 (1st Cir. BAP

1997).

15.     Here, Debtor's plan contemplates a regular income of $8,500 a month, which

equates to an annual income of $102,000.  Yet, on Debtor's Statement of Financial Affairs filed

with this Court, the only evidence of Debtor's income is that Debtor made $64,121.00 in 2007

pursuant to Debtor's 2007 1040.  It would appear, then, that Debtor made nothing in 2008 and

the beginning part of 2009.  Assuming the Debtor's filings with this Court are complete and

accurate, the Plan would then require a 100% increase in gross income from Debtor's 2007

reported income, and there is no showing of how or why this increase will occur.  Certainly,

there is no explanation as to why Debtor did not generate any income in 2008 and 2009, and why

such a situation will not be repeated in the immediate future.  Accordingly, the Plan does not

meet the feasibility requirement of Section 1325(a)(6).  *See* In re Keach, 225 B.R. 264

(Bankr.D.R.I. 1998) (sustaining objection to confirmation based on feasibility where plan

required an unexplained increase in the debtor's income by 37% from the previous year's

income); In re Nosker, 267 B.R. 555 (Bankr.S.D.Ohio 2001) (denying confirmation where

information on the debtor's filings with the court regarding monthly income and annual earnings

was inconsistent, confusing and fell short of establishing the income necessary to fund payments

required by the plan).

WHEREFORE, Komatsu respectfully requests that this Court deny confirmation of the

Plan, and grant such other and further relief as this Court deems just and appropriate.

Dated: November 16, 2009

Respectfully Submitted,

MCGUIRE WOODS LLP

By:        */s/ Lori M. Scott*

Lori M. Scott (VSB No. 77304)
MCGUIRE WOODS LLP
One James Center
901 East Cary Street
Richmond, VA 23219
(804) 775-1125
(804) 775-1061
lscott@mcguirewoods.com

-and-

Ryan O. Lawlor
VEDDER PRICE P.C.
222 N. LaSalle, Suite 2600
Chicago, IL 60601
(312) 609-7500
(312) 609-5005
rlawlor@vedderprice.com

*Attorneys for Komatsu Financial Limited*
*Partnership*

7

**KOMATSU FINANCIAL**

*777*

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO *002 8459-000*

Subject to the Terms and Conditions herein contained, the Seller hereby agrees to sell, and the Buyer having been quoted and offered both a cash sale price, payable immediately or within a limited number of days, and a contract time price which permits the Buyer to purchase the property now but pay in installments over an extended period of time, hereby agrees to buy, the following described property ("property") on a contract time price basis set forth below  The Contract time price is more than the cash sale price because it includes charges by the Seller for having to wait a period of time before collecting its full purchase price and for taking a risk in waiting such period of time  The property is to be used only for commercial or business purposes, includes all accessories and attachments, and shall, except as permitted by Paragraph 7 on page 4 hereof, be located at Buyer's Address set forth immediately below

| Seller's Information | Rish Equipment Company<br>1410 West Hundred Road<br>Chester, VA 23836 | | Quote Number | 1990 |

| Buyer's Information<br>Michael C Burt DBA MCB Farms and Excavating<br>16577 Highway 47<br>Chase City, VA  23924<br><br>804-372-4590<br><br>County·      Mecklenburg<br>Telephone     804-372-4590 | Physical Location | 16577 Highway 47<br>Chase City, VA 23924 |
| | County<br>State Charter Number<br>State of Registration<br>Tax ID | Mecklenburg |

| | | | Property Description | | | |
| Make<br>KOMATSU | Model<br>PC200LC-8 | Type<br>HYDRAULIC<br>EXCAVATOR | Description<br>to include Esco mechanical thumb and 42"<br>Lemac bucket | Serial No<br>A88259 | | Price<br>$147,225 00 |

**Trade-In Description**

| Year<br>2000 | Make<br>Hatachi | Model<br>EX200LC | Type<br>Hydraulic<br>Excavator | Description | Serial No<br>14HP092626 | Allowance<br>$51,000 00 | Amt Owed<br>$35,482.15 | Net Trade<br>$15,517 85 |

| Schedule of Payments | Statement of Transaction | |
|---|---|---|
| BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED, TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW | 1 Sales Price | $147,225 00 |
| | 2 Delivery, Installation, Repair<br>(or Other Service Charges)  $0 00 | |
| | 3 Sales Tax  $0 00 | |
| | 4 Cash Price (1+2+3) | $147,225 00 |
| Payments  Start Date  End Date  Payment  Total<br>60       5/7/2007   4/7/2012  $2,451 08  $147,064 80<br>60                     Total of Payments  $147,064 80 | 5 a Cash Down Payment  $0 00 | |
| | b Net Trade-In  $15,517 85 | |
| | c. Less Insurance  $0 00 | |
| | Total Down Payment (5a+5b-5c) | $15,517 85 |
| | 6 Net Cash Price (4 – 5) | $131,707 15 |
| | 7 a Lien & Filing Fees  $250 00 | |
| | b Other Fees  $0 00 | |
| | Total Other Charges | $250 00 |
| | 8 Amount Financed (6 + 7) | $131,957 15 |
| | 9 Finance Charge  (4 35%) | $15,107 65 |
| | 10 Total of Payments (8 + 9) | $147,064 80 |
| | 11 Total Time Price (4 + 7 + 9) | $162,582 65 |

RECEIVED APR 1 0 2007

Date finance charge begins to accrue (if different than contract date)

KF524R (05/03)       ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)    Buyer's Initials
Page 1 of 5                                                                                

**KOMATSU**
**FINANCIAL**

### SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO _____

| Insurance Coverage | Buyer Place of Business and Other Buyer Information |
|---|---|
| **LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.**<br><br>Physical Damage Insurance Covering The Property Is Required<br><br>BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT<br><br>Agency Name  *Crowder & Holloway, Inc*<br>Mailing Address<br><br><br>Contact<br>Phone  *434- 447-3434* | IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS<br><br>Physical Location<br><br><br>BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED<br><br>THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES<br><br>IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE |

| | Partner Names and Addresses | |
|---|---|---|
| Name | Address | Tax ID ____ |

**Delinquency Charge**  After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1 5% per month  Buyer also agrees to pay all expenses, including reasonable attorney's fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract

**Security Interest:**  In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including amounts payable under any insurance policies with respect thereto  Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement  Buyer hereby authorizes Seller or its assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein granted to Seller

**Location of Property**  Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate  Except as permitted by Paragraph 7, Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller (except that in the State of Pennsylvania, the property will not be moved from the above location without such prior written consent)

**ENTIRE AGREEMENT**  BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON Page 3-5 hereof, which he has read and to which he agrees, contains the entire agreement relating to the conditional sale of the property and supersedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the property  This contract is not binding upon Seller, unless signed by the manager of Seller or owner

**NOTICE TO BUYER:  1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others  (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

#### BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER

| | | |
|---|---|---|
| Buyer  Michael C Burt DBA MCB Farms and Excavating | Effective Contract Date | 3/28/2007 |
| By ✓ *[signature]*                    Title  ✓ *Owner* | Salesman's Signature | *[signature]* |
| Co-Signer | Signature For | *[signature]* |
| By                              Title | Seller Approval | *[signature]* |

KF524R (05/03)        ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)        Buyer's Initials
Page 2 of 5                                                                                                          *[initials]*

**KOMATSU**
**FINANCIAL**

### SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO _____

**Conditional Terms and Conditions**

**1 Assignment by Seller; Waiver of Defenses Against Assignee**

Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF") If Seller does in fact assign this contract to KF then after such assignment a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto, b) Seller shall not be KF's agent for any purposes, c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract), d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature, it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF  Seller hereby agreeing to remain responsible therefor

**2 Waiver of Defenses Acknowledgment, Place of Payment.**

Buyer acknowledges that, KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's agreements, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof  If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer

**3 Buyer's Warranties and Representations**

Buyer warrants, represents and covenants, a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness, b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances, c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated, d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine, e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it.

**4 Events of Default; Acceleration**

A very important element of this contract is that Buyer make all its payments promptly as agreed upon  Also essential is that the property continue to be in good condition and adequate security for the indebtedness  The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary

(a) any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due

(b) Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction,

(c) Buyer dies, becomes insolvent or ceases to do business as a going concern,

(d) it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition

(e) any of the property is lost or destroyed,

(f) a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature,

(g) property of Buyer be attached or a receiver be appointed for Buyer;

(h) whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure,

(i) any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained connection with this transaction is terminated or breached

**If Buyer shall be in default hereunder, the Indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges

**5 Seller's Remedies After Default; Consent to Enter Premises**

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law  After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices  Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession)  In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)

Buyer's Initials

# KOMATSU
## FINANCIAL

**SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT**

ACCOUNT NO _____

Buyer therefore agrees that Seller by itself or through its agent may, without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property

### 6 Waiver of Defaults, Agreements Inclusive

Seller may in its sole discretion waive a default or cure a default at Buyer's expense Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") in writing signed by Seller No oral agreement shall be binding

### 7 Buyer's Agreements

Buyer agrees, a) to defend at Buyer's own cost any action, proceeding or claim affecting the property, b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract, d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller, e) that Buyer will not misuse, fail to keep in good repair, secrete, or, except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property, f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"), all leases of the Property ("Leases"), other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guaranties thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"), all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"), all rights under and benefits of the terms, covenants and provisions of the Documents, and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4 to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues, to endorse any checks or other instruments or orders in connection with the Revenues, and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)

Buyer's Initials

## KOMATSU
**FINANCIAL**

### SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO _____

Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller. Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents. Buyer agrees and warrants that if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller; if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the Property after the occurrence of an event of default under this Contract, there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing, the Property is and will remain personal property, and the Property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's. Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the Property. Buyer will not remove the Property or permit any lessee of the Property to remove the Property from those states where Seller has agreed in writing the Property may be located. Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es). Buyer shall cause each lessee of Property to permit Seller to visit and inspect the Property on such lessee's premises or on any other premises where such lessee has control. Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization.

**8  Insurance and Risk of Loss**  Liability Insurance coverage for bodily and property damage caused to others is NOT included herein

All risk of loss, damage to or destruction of the property shall at all times be on Buyer. Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear. Seller's acceptance of policies in lesser amounts of risks shall not be a waiver of Buyer's foregoing obligation. In the event that the property damage insurance required hereby shall be issued through the Agency as provided in the Insurance Coverage section on the second page of this Contract (such insurance obtained through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the first page of this Contract shall be allocated to the payment of the premium for the Insurance indicated in section 5c of the first page of this Contract. Seller agrees that the portion of the Cash and Trade-In allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium. Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance. Buyer acknowledges that (i) Buyer has the option of furnishing the insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance. Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance. As additional security for the payment of the indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer respecting future to unearned premiums and dividends which may be payable on or in respect of the Insurance)

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller. In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon. Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application). Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the insurer with respect to any such cancellation

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full. Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller. Seller assumes no liability as an insurer. Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney). Buyer acknowledges that neither the insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation

**9  Miscellaneous**

Buyer waives all exemptions. Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer acknowledges receipt of a true copy and waives acceptance deemed "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors or assigns to those parties. If more than one Buyer executes this contract, their obligations under this contract shall be joint and several

**KOMATSU**
**FINANCIAL**

# SELLER'S ASSIGNMENT

TO      KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re      Security Agreement/Contract between Michael C Burt DBA MCB Farms and Excavating, ("Buyer") and undersigned ("Assignor"), dated March 28, 2007, having a present unpaid balance of $147,064 80 covering PC200LC-8 S/N A88259 (hereinafter referred to as "Agreement")

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder  Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty  Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee  Assignor waives notice of acceptance hereof

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below

| | |
|---|---|
| [X] | **1  WITHOUT RECOURSE** |
| | Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay |
| [ ] | **2  WITH RECOURSE** |
| | Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security |
| [ ] | **3  LIMITED REPURCHASE AGREEMENT** |
| | Assignor further agrees that if the Buyer fails to pay the first (0) installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location |
| [ ] | **4  PARTIAL REPURCHASE AGREEMENT** |
| | Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee $0 or purchase the Property from Assignee for the then unpaid balance in its then condition and location |

RISH EQUIPMENT COMPANY
_____
(Assignor)

By _____

March 28, 2007
_____
(executed)

TIM NATHANIEL
GENERAL CREDIT MANAGER

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto  Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement

KF521R (05/03)                                                                                                    Page 1 of 1

**UCC FINANCING STATEMENT**

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Rish Equipment Company
P.O. Box 330
Bluefield, W. V. 24701

070411 7239 /3

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| Burt | Michael | C. | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16577 Highway 47 | Chase City | Va. | 23924 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | Individual | Virginia | | NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| MCB Farms and Excavating | | | | |
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 16577 Highway 47 | Chase City | Va. | 23924 | USA |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | Tradestyle | Virginia | | NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Komatsu Financial Limited Partnership | | | | |
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| One Continental Towers, 1701 W. Golf Rd. Ste. 300 | Rolling Meadows | Il. | 60008 | USA |

4. This FINANCING STATEMENT covers the following collateral:

One Komatsu PC200LC-8 Hydraulic Excavator SN/A88259 together with all present and future
attachments, accessories, replacement parts, repairs, additions, and all proceeds thereof.

28459

| 5. ALTERNATIVE DESIGNATION (if applicable) | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|
| 6. This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS     Attach Addendum | | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional] | | All Debtors | Debtor 1 | Debtor 2 |
| 8. OPTIONAL FILER REFERENCE DATA | | | | | | |

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

**KOMATSU FINANCIAL**

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

*77 7*

ACCOUNT NO *00 2 8459-001*

Subject to the Terms and Conditions herein contained, the Seller hereby agrees to sell, and the Buyer having been quoted and offered both a cash sale price, payable immediately or within a limited number of days, and a contract time price which permits the Buyer to purchase the property now but pay in installments over an extended period of time, hereby agrees to buy, the following described property ("property") on a contract time price basis set forth below. The Contract time price is more than the cash sale price because it includes charges by the Seller to compensate the Seller for having to wait a period of time before collecting its full purchase price and for taking a risk in waiting such period of time. The property is to be used only for commercial or business purposes, includes all accessories and attachments, and shall, except as permitted by Paragraph 7 on page 4 hereof, be located at Buyer's Address set forth immediately below

| Seller's Information | Rish Equipment Company<br>1410 West Hundred Road<br>Chester, VA  23836 | | Quote<br>Number | 2004 |
|---|---|---|---|---|

| Buyer's Information | | | | |
|---|---|---|---|---|
| Michael C Burt DBA MCB Farms and Excavating<br>16577 Highway 47<br>Chase City, VA  23924 | | Physical Location | 16577 Highway 47<br>Chase City, VA  23924 | |
| 804-372-4590 | | County | Mecklenburg | |
| | | State Charter Number | | |
| County | Mecklenburg | State of Registration | | |
| Telephone | 804-372-4590 | Tax ID | | |

| | | | Property Description | | | |
|---|---|---|---|---|---|---|
| **Make** | **Model** | **Type** | **Description** | | **Serial No** | **Price** |
| KOMATSU | D39PX-21A | CRAWLER DOZER | | | 1899 | $78,000 00 |

| | | | | Trade-In Description | | | | |
|---|---|---|---|---|---|---|---|---|
| **Year** | **Make** | **Model** | **Type** | **Description** | **Serial No** | **Allowance** | **Amt Owed** | **Net Trade** |
| 1998 | John Deere | 650G | Crawler Dozer | | T0650GW838583 | $30 000 00 | $7,870 45 | $22,129 55 |

| Schedule of Payments | Statement of Transaction | |
|---|---|---|
| BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED, TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW | 1 Sales Price | $78,000 00 |
| | 2 Delivery, Installation, Repair (or Other Service Charges) | $0 00 |
| | 3 Sales Tax | $0 00 |
| | 4 Cash Price (1+2+3) | $78,000 00 |
| | 5 a Cash Down Payment | $2,450 00 |
| | b Net Trade-In | $22,129 55 |
| | c Less Insurance | $0 00 |
| | Total Down Payment (5a+5b-5c) | $24,579 55 |
| | 6 Net Cash Price (4 - 5) | $53,420 45 |
| | 7 a Lien & Filing Fees | $250 00 |
| | b Other Fees | $0 00 |
| | Total Other Charges | $250 00 |
| | 8 Amount Financed (6 + 7) | $53,670 45 |
| | 9 Finance Charge (4 35%) | $6,144 75 |
| | 10 Total of Payments (8 + 9) | $59,815 20 |
| | 11 Total Time Price (4 + 7 + 9) | $84,394 75 |

| Payments | Start Date | End Date | Payment | Total |
|---|---|---|---|---|
| 60 | 6/4/2007 | 5/4/2012 | $996 92 | $59,815 20 |
| 60 | | | Total of Payments | $59,815 20 |

RECEIVED MAY 1 2007

Date finance charge begins to accrue (if different than contract date)

Buyer's Initials 

**KOMATSU**
**FINANCIAL**

### SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO _____

| Insurance Coverage | Buyer Place of Business and Other Buyer Information |
|---|---|
| **LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.** | IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS |
| Physical Damage Insurance Covering The Property Is Required | Physical Location |
| BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT | |
| Agency Name   Crowder & Holloway Inc | BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED |
| Mailing Address   P O Box188 | |
|                South Hill, VA  23970-0188 | THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES |
| Contact | IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE |
| Phone   (434) 447-3434 | SHOWN BELOW, SHOW ACTUAL DELIVERY DATE |

**Partner Names and Addresses**

| Name | Address | Tax ID |
|---|---|---|
| | | |

**Delinquency Charge**  After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1 5% per month  Buyer also agrees to pay all expenses, including reasonable attorney's fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract

**Security Interest**  In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including examples under any insurance policies with respect thereto  Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement  Buyer hereby authorizes Seller or its assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein granted to Seller

**Location of Property**  Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate  Except as permitted by Paragraph 7, Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller (except that in the State of Pennsylvania, the property will not be moved from the above location without such prior written consent)

**ENTIRE AGREEMENT**  BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON Page 3-5 hereof, which he has read and to which he agrees, contains the entire agreement relating to the conditional sale of the property and supersedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the property  This contract is not binding upon Seller, unless signed by the manager of Seller or owner

**NOTICE TO BUYER:  1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER

| Buyer   Michael C Burt DBA MCB Farms and Excavating | Effective Contract Date     4/23/2007 |
|---|---|
| By _____   Title _OWNER_ | Salesman's Signature _____ |
| Co-Signer | Signature For |
| By _____   Title _____ | Seller Approval _____ |

KF524R (05/03)
Page 2 of 5

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)

Buyer's Initials

## KOMATSU
**FINANCIAL**

### SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO _____

**Conditional Terms and Conditions**

**1 Assignment by Seller; Waiver of Defenses Against Assignee**

Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF") If Seller does in fact assign this contract to KF then after such assignment a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto, b) Seller shall not be KF's agent for any purposes, c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract), d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature, it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF  Seller hereby agreeing to remain responsible therefor

**2 Waiver of Defenses Acknowledgment; Place of Payment.**

Buyer acknowledges that, KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof  If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer

**3 Buyer's Warranties and Representations**

Buyer warrants, represents and covenants, a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness, b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances, c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated, d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine, e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it.

**4 Events of Default; Acceleration**

A very important element of this contract is that Buyer make all its payments promptly as agreed upon  Also essential is that the property continue to be in good condition and adequate security for the indebtedness  The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary

(a) any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due

(b) Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction,

(c) Buyer dies, becomes insolvent or ceases to do business as a going concern,

(d) it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition

(e) any of the property is lost or destroyed,

(f) a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature,

(g) property of Buyer be attached or a receiver be appointed for Buyer,

(h) whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure,

(i) any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained connection with this transaction is terminated or breached

**If Buyer shall be in default hereunder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges

**5 Seller's Remedies After Default; Consent to Enter Premises**

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law  After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices  Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession)  In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)

Buyer's Initials

**KOMATSU**
**FINANCIAL**

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO _____

Buyer therefore agrees that Seller by itself or through its agent may, without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property

### 6 Waiver of Defaults, Agreements Inclusive

Seller may in its sole discretion waive a default or cure a default at Buyer's expense Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") unless in writing signed by Seller No oral agreement shall be binding

### 7 Buyer's Agreements

Buyer agrees, a) to defend at Buyer's own cost any action, proceeding or claim affecting the property, b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract, d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property, f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract.

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"), all leases of the Property ("Leases"), other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guarantees thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"), all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"), all rights under and benefits of the terms, covenants and provisions of the Documents, and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4 to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues, to endorse any checks or other instruments or orders in connection with the Revenues, and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents

ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP)        Buyer's Initials

**KOMATSU**
**FINANCIAL**

### SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO _____

Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents Buyer agrees and warrants that if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller, if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the Property after the occurrence of an event of default under this Contract, there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing, the Property is and will remain personal property, and the Property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the Property Buyer will not remove the Property or permit any lessee of the Property to remove the Property from those states where Seller has agreed in writing the Property may be located Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es) Buyer shall cause each lessee of Property to permit Seller to visit and inspect the Property on such lessee's premises or on any other premises where such lessee has control Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization

**8 Insurance and Risk of Loss Liability** Insurance coverage for bodily and property damage caused to others is NOT included herein

All risk of loss of, damage to or destruction of the property shall at all times be on Buyer Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear Seller's acceptance of policies in lesser amounts of risks shall not be a waiver of Buyer's foregoing obligation In the event that the property damage insurance required hereby shall be issued through the Agency as provided in the Insurance Coverage section on the second page of this Contract (such insurance obtained through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the first page of this Contract shall be allocated to the payment of the premium for the Insurance indicated in section 5c of the first page of this Contract Seller agrees that the portion of the Cash and Trade-In allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance Buyer acknowledges that (i) Buyer has the option of furnishing the insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance As additional security for the payment of the indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer relating to unearned premiums and dividends which may be payable on or in respect of the Insurance)

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application) Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the Insurer with respect to any such cancellation

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller Seller assumes no liability as an insurer Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney) Buyer acknowledges that neither the insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation

**9 Miscellaneous**

Buyer waives all exemptions Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof Buyer acknowledges receipt of a true copy and waives acceptance hereof "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs executors, or administrators, successors or assigns to those parties If more than one Buyer executes this contract, their obligations under this contract shall be joint and several

**KOMATSU**
**FINANCIAL**

# SELLER'S ASSIGNMENT

TO      KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re      Security Agreement/Contract between Michael C Burt DBA MCB Farms and Excavating, ("Buyer") and undersigned
("Assignor"), dated April 23, 2007, having a present unpaid balance of $59,815 20 covering D39PX-21A S/N 1899
(hereinafter referred to as "Agreement")

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns
("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in
the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement
thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in
Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in
Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to
Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and
all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on
any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder Assignor
waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now
or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have
against the Buyer any rights Assignor may now or hereafter have

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or
consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any
accompanying note or guaranty Assignee's knowledge at any time of any breach of or noncompliance with any of the
foregoing shall not constitute any waiver by Assignee Assignor waives notice of acceptance hereof

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are
governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below

[X]   **1   WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay

[ ]   **2   WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee,
Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment
payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the
event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any
other person or any security

[ ]   **3   LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first (0) installments of his obligation within 15 days of
scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within
the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from
Assignee the Property for the then unpaid balance in its then condition and location

[ ]   **4   PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned
upon demand will pay to Assignee $0 or purchase the Property from Assignee for the then unpaid balance in its then
condition and location

RISH EQUIPMENT COMPANY
_____
                                                           (Assignor)

By     _____

April 23, 2007
_____
        (executed)

TIM NATHANIEL
GENERAL CREDIT MANAGER
_____

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between
Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with
respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to
Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto Assignor
represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all
its obligations under the Agreement.

KF521R (05/03)                                                                                         Page 1 of 1

SEC CLERK'S OFFICE

2001 MAY -2  A 11: 38

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS (front and back) CAREFULLY
A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Rish Equipment Company
P.O. Box 330
Bluefield, W. V. 24701

070502  7132 -4

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names
1a. ORGANIZATION'S NAME

| OR | 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|----|----|----|----|----|
| | Burt | Michael | C. | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|----|----|----|----|----|
| 16577 Highway 47 | Chase City | Va. | 23924 | USA |

| 1d. TAX ID #  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | NONE |
|----|----|----|----|----|----|
| | | Individual | Virginia | | |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names
2a. ORGANIZATION'S NAME
AICS Farm and Excavating

| OR | 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|----|----|----|----|----|
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|----|----|----|----|----|
| 16577 Highway 47 | Chase City | Va. | 23924 | USA |

| 2d. TAX ID #  SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | NONE |
|----|----|----|----|----|----|
| | | Tradestyle | Virginia | | |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)
3a. ORGANIZATION'S NAME
Komatsu Limited Partnership

| OR | 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|----|----|----|----|----|
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|----|----|----|----|----|
| One Continental Tower, 1701 W. Golf Rd., Ply 500 | Rolling Meadows | IL | 60008 | USA |

4. This FINANCING STATEMENT covers the following collateral:

One Komatsu model D19PX-21A Crawler Dozer SN/1899 together with all present and future
attachments, accessories, replacement parts, repairs, additions, and all proceeds thereof.

| 5. ALTERNATIVE DESIGNATION (if applicable) | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|----|----|----|----|----|----|----|

6. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

284591

**KOMATSU**
**FINANCIAL**

# Cross Collateral Security Agreement

This Agreement is by and between Komatsu Financial Limited Partnership ("KF") located at 1333 Butterfield Road, Downers Grove, IL 60515 and Michael C Burt DBA MCB Farms and Excavating (the "Company") located at 16577 Highway 47 ,Chase City, VA 23924

WHEREAS, KF has and/or may hereafter acquire and/or enter into Contracts (as defined herein) with the Company, and it is a condition precedent to KF, as appropriate, acquiring or entering into such Contracts that the Company shall agree to all terms and conditions included herein  Since the terms and conditions included in this Agreement will affect each of the Contracts, the Company desires the agreement of KF to the terms and conditions hereof

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH IS HEREBY ACKNOWLEDGED, THE PARTIES HERETO AGREE AS FOLLOWS

1   The following terms as used herein shall be defined as follows
    a   "Contracts" shall mean all present and future (i) conditional sales contracts, lease agreements, security agreements, notes and other like agreements which KF may acquire arising from the sale or lease to the Company of equipment and/or inventory from any vendor or lessor, and (ii) lease agreements, security agreements, direct loan agreements, notes and other agreements of any kind between the Company and KF
    b   "Collateral" shall mean all present and future equipment, inventory, and other property described in and subject to the Contracts and/or which secures the performance of the Company thereunder, together with all the cash and non-cash proceeds of all of the foregoing
    c   "Obligations" shall mean all the present and future duties, liabilities and obligations due to KF from the Company under the Contracts, whether joint or several, direct or indirect, absolute or contingent, secured or unsecured, matured or unmatured, or by assignment or otherwise
2   Each item of Collateral shall secure the payment and other performance by the Company of each of the Obligations and shall continue to do so unless and until all of the Obligations are paid in full and otherwise satisfied and the Contracts have been fully performed by the Company  In furtherance of the foregoing, the Company does hereby grant to KF a security interest in all Collateral as collateral security for any and all Obligations  KF shall retain its security interest in the Collateral as security for the Company's performance of the Obligations notwithstanding the payment in full or other complete performance by the Company of one or more Obligations or Contracts  The Company will obtain title to any item of Collateral subject to a lease agreement subject to the security interest identified in this Agreement notwithstanding the execution, delivery or terms of any Bill of Sale delivered by KF  The security interest granted hereby is a separate, independent security interest that is in addition to, and not in substitution of, any and all security interests heretofore or hereafter granted by the Company to KF, including, without limitation, those granted by the Contracts  The Company hereby represents and warrants that the security interest created hereby constitutes a first priority lien on the Collateral, except for any prior lien of KF  To the extent permitted by law, the Company hereby irrevocably authorizes KF to file a financing statement with respect to the Collateral signed only by KF, and to file a carbon, photocopy or other reproduction of this Agreement as a financing statement
3   Without limitation of any provisions in any Contracts, the Company agrees that
    (i)   it shall keep the Collateral free from any liens, encumbrances or security interests other than in favor of KF and shall defend at the Company's cost and expense any action, proceeding or claim affecting the Collateral,
    (ii)   it shall keep and maintain such insurance upon the Collateral in such amounts and manner as KF may require, loss, if any, payable to KF or its assigns as their interests may appear,
    (iii)   no financing statement covering any of the Collateral or any proceeds thereof is on file in favor of anyone other than KF, but if such other financing statement is on file, it will be terminated or subordinated,
    (iv)   it has full authority to enter into this Agreement and in so doing it is not violating its charter or by-laws, any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this Agreement binding upon it,
    (v)   it shall pay reasonable attorney's fees and other expenses incurred by KF in enforcing its rights against the Company under this Agreement or any Contract,

(vi) it shall pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against any of the Collateral or this Agreement, which obligation shall survive the termination of this Agreement,

(vii) if a certificate of title be required or permitted by law, the Company shall obtain such certificate with respect to the Collateral, showing the security interest of KF thereon and in any event do everything necessary or expedient to preserve or perfect the security interest of KF therein,

(viii) the Company will not misuse, fail to keep in good repair, secrete, or without the prior written consent of KF or except as expressly permitted under the relevant Contract, sell, rent, lend, encumber or transfer any of the Collateral, notwithstanding KF's claim to proceeds,

(ix) KF may enter upon the Company's premises or wherever any of the Collateral may be located at any reasonable time to inspect the Collateral and the Company's books and records pertaining to the Collateral, and the Company shall assist KF in making such inspection, and

(x) it shall, at its cost and expense, upon request of KF, duly execute and deliver, or cause to be duly executed and delivered, to KF such further documents and instruments and do and cause to be done such further acts as may be necessary or proper in the opinion of KF to carry out more effectively the provisions and purpose of this Agreement

4   A default by the Company under one or more of the Contracts or this Agreement shall constitute a default by the Company under each of the Contracts  Following such a default, KF may immediately exercise all the rights and remedies (i) of a secured party under the Uniform Commercial Code, (ii) otherwise accorded KF under any of the Contracts whether or not such rights or remedies are specifically set forth in the Contract being enforced, and (iii) otherwise lawfully available to KF

5   The parties hereto intend by this Agreement (i) to create cross default conditions among all the Contracts, and (ii) to create cross security rights and remedies in the favor of KF with respect to the Collateral and the Obligations  All the rights and remedies granted to KF hereunder shall be cumulative and not alternative, shall be in addition to and shall in no manner impair or affect the rights and remedies of KF under the Contracts or under any statute, judicial decision or rule of law  This Agreement shall become a part of and specifically incorporated in the Contracts  Any provisions hereof contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof  Except as expressly modified herein, all the terms and conditions included in the Contracts shall remain in full force and effect  This Agreement may be modified only through the written agreement of the parties hereto and shall inure to the benefit of KF and the successors and assigns of KF and shall be binding upon the Company and the successors and assigns of the Company  The Company may not assign its rights and/or obligations hereunder or under any of the Contracts without the prior written consent of KF

Dated  April 23, 2007


Komatsu Financial Limited Partnership

By _____          By _____

Title _____        Michael C Burt

Title _____        Individually _____